**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


DALE DRISCOLL,                                :

      Petitioner,                        :        Case No. 3:10cv0336

 vs.                                          :        District Judge Walter Herbert Rice
                                                       Magistrate Judge Sharon L. Ovington
WARDEN, Lebanon Correctional       :
Institution,
                                             :
      Respondent.

---

## REPORT AND RECOMMENDATIONS[1]

---

I.    __INTRODUCTION__

      Petitioner is an inmate in state custody at the Lebanon Correctional Institution.  He

brings this case pro se seeking a writ of habeas corpus under 28 U.S.C. §2254 challenging

his conviction in the Clark County, Ohio Court of Common Pleas of raping a four-year-

old child.  He is serving a life sentence without the possibility of parole.

      This case is before the Court upon Petitioner's petition for writ of habeas corpus

(Doc. #2), Respondent's return of writ (Doc. #8), Petitioner's reply (Doc. #10), and the

record as a whole.

      Petitioner raises the following Grounds for Relief (without correction):

---

    [1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendations.

**GROUND ONE**:  The Appellant was given a Life Sentence, w/out the Possibility of Parole at the Age of Twenty Two (22), a sentence which would cause him to serve over sixty (60) years, for what is essentially a minor violent offense – The Charge and the Conviction, were a direct result of an inconclusive Lie Detector Test. (i.e. no other evidence supported the conviction).  The Petitioner would have received less time for Murder.

**GROUND TWO**:  Ineffective Assistance of Counsel for failure to make timely objection to improper testimony, failure to file several pre-trial motions, failure to request a pre-sentence investigation violative of the Sixth Amendment to the U.S. Constitution.

**GROUND THREE**:  The Court allowed hearsay testimony over objection of counsel in violation of the Petitioner right to a fair trial under the Fifth and Fourteenth Amendment to the U.S. Constitution.

**GROUND FOUR**: Appellant was denied his Fifth and Fourteenth Amendment Right to a Fast and Speedy Trial.

(Doc. #2).

## II.  <u>PROCEDURAL BACKGROUND</u>

The specific crime that the jury found Petitioner had committed was rape in violation of Ohio Rev. Code §2907.02(A)(1) with the specification that the victim was under ten years old pursuant to Ohio Rev. Code §2907.02(A)(1)(b).  (Doc. #2, Exhibits 1, 3, 4).  As indicated previously, the trial judge imposed a life sentence without the possibility for parole.

On direct appeal, Petitioner raised four assignments of error:

1.  The sentence imposed by the trial court is unconstitutional as it represents cruel and unusual punishment and is disproportional to the offense committed.

2.  Appellant was denied effective assistance of counsel when defense counsel failed to raise timely objection to improper testimony, failed to file a motion

in limine anticipating said testimony and, finally, failed to request a pre-sentence report when the ultimate merciless sentence was possible.

3. The trial court committed prejudicial error by overruling summarily defense objections to hearsay testimony.

4. The trial court committed prejudicial error when it overruled appellant's motion to dismiss for failure to bring him to trial within the time limits mandated by O.R.C. 2945.71 et seq.

(Doc. # 8, Exh. 7). On November 20, 2009, the Ohio Court of Appeals overruled Petitioner's assignments of error and affirmed the conviction. (Doc. #8, Exh. 9; *see State v. Driscoll*, 2009-Ohio-6134; 2009 Ohio App. LEXIS 5155)

Petitioner did not file a timely appeal in the Ohio Supreme Court. On January 20, 2010, he filed a notice of appeal and motion for a delayed appeal in the Ohio Supreme Court. (Doc. # 8, Exhs. 10, 11). On March 3, 2010, the Ohio Supreme Court denied Petitioner's motion (Doc. #8, Exh. 12) effectively ending his litigation in state court.

## III.  APPLICABLE LAW

### A.  The Antiterrorism and Effective Death Penalty Act (AEDPA)[2]

A federal court may consider a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an

---

[2] Codified in part at 28 U.S.C. § 2254. *See* Pub.L. No. 104-132, 110 Stat. 1214.

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or was based on an unreasonable determination of

the facts in light of the evidence present in the state court proceedings. 28 U.S.C. §

2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 402-03 (2000) (O'Connor, J.).

The phrases "contrary to" and "unreasonable application" have independent meaning:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the law set forth in
> [Supreme Court] cases, or if it decides a case differently that we have done
> on a set of materially indistinguishable facts. The court may grant relief
> under the "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from [Supreme Court] decisions but
> unreasonably applies it to the facts of a particular case. The focus on the
> latter inquiry is whether the state court's application of clearly established
> federal law is objectively unreasonable, and . . . an unreasonable application
> is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citations omitted); *see also Broom v. Mitchell*,

441 F.3d 392, 398 (6th Cir. 2006).

"A decision is an 'unreasonable application' of clearly established Supreme Court

law if a 'state court correctly identifies the governing legal principle from [the Supreme

Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's

case.'" *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir. 2008) (quoting in part *Williams*, 529

U.S. at 413) (brackets in original). "An unreasonable application of federal law is one

that is 'objectively unreasonable' and not merely incorrect." *Sinkfield v. Brigano*, 487

F.3d 1013, 1016 (6th Cir. 2007) (citation omitted). Thus, "[a] federal habeas court may

not find a state adjudication to be 'unreasonable' 'simply because that court concludes in

its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000).

Where a state court has not articulated its reasons for rejecting a convicted criminal's grounds for appeal, a federal court considering that individual's subsequent habeas petition should "focus on the result of the state court's decision" to determine whether that decision is contrary to or unreasonably applies clearly established United States Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented. *Stovall*, 212 F.3d at 943 n.1. Such independent review, while "not a full, de novo review of the claims," nonetheless "remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943.

For purposes of federal habeas review, a state court's determinations of factual issues are presumed correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). That deference extends to the state court's credibility assessments, *see Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), and to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). "Indeed, the presumption applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." *Id.* (citing *Patton v.*

*Yount*, 467 U.S. 1025, 1038 (1984)).  The same presumption applies to state appellate courts' findings of fact made on review of the state trial record.  *Sumner v. Mata*, 449 U.S. 539, 546 (1981); *see Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

### B.    Fair Presentation and Procedural Default

Before a federal court will consider a state prisoner's claims on habeas corpus review, he ordinarily first must have exhausted the remedies available in the courts of the custodial state.  28 U.S.C. §§ 2254(b), (c); *see Franklin v. Rose*, 811 F.2d 322 (6th Cir. 1987).  A state defendant with federal constitutional claims therefore must fairly present those claims to the state's highest court for consideration before raising them in a federal habeas corpus action.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see Franklin*, 811 F.2d at 325.  Accordingly, a federal habeas petitioner must present his claim to the state courts as a federal constitutional issue, not simply as an issue arising under state law, in order to preserve the claim for federal habeas review.  *Franklin*. 811 F.2d at 325 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees*, 822 F.2d 1418, 1420-24 (6th Cir. 1987).

Additionally, if a defendant fails to present the state courts with his federal claims in accordance with that state's established procedural rules, and if the final state court addressing the defendant's claims holds that such procedural default precludes further

consideration of such claims, the federal courts also may not consider the merits of those claims. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *see Engle v. Isaac*, 456 U.S. 107, 125-29 (1982). Such procedural bars may be imposed for failing to follow state procedural rules during pretrial, trial, or on appeal. *See id.* Where a procedural default has occurred, he usually can obtain federal habeas review of such claims by demonstrating cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 129. The United States Supreme Court has also recognized "a narrow exception to the cause requirement" only in those cases implicating "fundamental miscarriages of justice" – *i.e.*, "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," and as to claims of capital sentencing error. *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citing *Murray*, 477 U.S. at 496; *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

A four-part analysis applies to determining whether a procedural default precludes federal habeas review of a claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). First, the district court determines if the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim. *Id.* Second, the court determines whether the state courts actually enforced the state procedural sanction. *Id.* Third, the court determines whether the state procedural forfeiture is an "adequate and independent" state ground on which the state may rely to foreclose review of a federal constitutional claim. *Id.* If all three circumstances exist, the court determines whether the petitioner has

demonstrated both "cause" for his procedural default and actual prejudice stemming from the alleged constitutional error. *Id.*

IV.   **ANALYSIS**

A.   **First Ground for Relief**

In his First Ground for Relief, Petitioner asserts that his life sentence without the possibility of parole is excessive. Respondent argues that Petitioner has procedurally defaulted the claim by not objecting to his sentence in the trial court and by not raising his claim in a timely appeal to the Ohio Supreme Court. Respondent's contentions are well taken.

The Ohio Court of Appeals expressly found that Petitioner's failure to raise his excessive-punishment claim constituted a waiver of that claim. It therefore enforced its adequate and independent contemporaneous-objection rule against Petitioner, thus establishing his procedural default. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000). Petitioner also committed a procedural default by not raising this claim in a timely appeal to the Ohio Supreme Court. *See Bonilla v. Hurley*, 370 F. 3d 494, 497 (6th Cir. 2004).

Petitioner asserts that he was unable to timely file his notice of appeal in the Ohio Supreme Court because he was proceeding pro se and because he was unable to obtain necessary copies of the Ohio Court of Appeals' opinion from prison officials. (Doc. #8 at 258). In his Traverse, he also states that he had insufficient funds to pay for the copies. (Doc. # 10 at 3). These unsubstantiated contentions do not provide sufficient cause to

excuse the procedural default. The United States Court of Appeals for the Sixth Circuit has found that a petitioner's "*pro se* status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default." *Bonilla,* 370 F. 3d at 498. Petitioner's blanket assertion that he could not obtain necessary copies from prison officials is insufficient to establish cause. *Cook v. Stegall,* 295 F.3d 517, 522 (6th Cir. 2002). Unsupported allegations that he lacked the ability to pay for copies is likewise insufficient to establish cause. Petitioner clearly had at least one copy of the Ohio Court of Appeals' opinion and could have timely filed in the Ohio Supreme Court.

Alternatively, even assuming that his sentencing claim asserts a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the Constitution, as opposed to a non-cognizable state claim challenging the State of Ohio's sentencing law, his claim lacks merit. The Ohio Court of Appeals wrote:

> As the State correctly notes, Driscoll failed to raise these arguments below, thus they are waived. Further, "'It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community.' *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 69, 203 N.E.2d 334 * * * . 'As a general rule, a sentence that falls within the terms of a valid statute cannot amount to cruel and unusual punishment.' *Id.*" *State v. McConnell,* Montgomery App. No. 19993, 2004-Ohio-4263, ¶ 140.

> R.C. 2907.02(B) provides, "* * * if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, the court may impose upon the offender a term of life without parole." Driscoll's sentence of life without parole for raping four year old N.E., in violation to R.C. 2907.02(A)(1)(b),

does not constitute cruel and unusual punishment, because it is "not
disproportionate or shocking to the moral sense of the community, in view
of the heinous nature of the crime." *Id.*, ¶ 142.

(Doc. #8, Exh. 9 at 238)(citations omitted).

The Supreme Court of the United States has held that "the length of the sentence

actually imposed is purely a matter of legislative prerogative." *Rummel v. Estell*, 445

U.S. 263, 274 (1980).  A sentence that falls within the maximum penalty authorized by

statute "generally does not constitute "cruel and unusual punishment.'" *Austin v.*

*Jackson,* 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek,* 65 F.3d

60, 62 (6th Cir. 1995)).  In *Rummel*, the Court upheld a life sentence for a defendant's

third nonviolent felony.  In *Harmelin v. Michagan*, 501 U.S. 957 (1991), the Court upheld

a sentence of life without the possibility of parole for possession of a large amount of

cocaine.

The Ohio Court of Appeals' decision did not expressly cite *Rummel* or other

Supreme Court precedent; yet its decision is still entitled to deference so long as the result

is consistent with Supreme Court precedent.  *Harrington v. Richter,* __U.S. __, 131 S.Ct.

770, 784 (2011).  The Ohio appellate court conducted a proportionately review and

concluded the Petitioner's sentence was "not disproportionate or shocking to the moral

sense of the community, in view of the heinous nature of the crime."  Because Petitioner's

crime – rape of a child under age ten – was heinous, and because the trial court imposed a

sentence authorized by Ohio statutory law, the Ohio Court of Appeals' conclusion

reasonably applied Supreme Court precedent.  "Under [the AEDPA's] 'unreasonable

application' clause..., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Villagarcia v. Warden*, 599 F.3d 529, 533 (6th Cir. 2010) (quoting in part *Williams*, 529 U.S. at 413). While a de novo review of Petitioner's sentence might not reach the same result, the Ohio Court of Appeals' decision was not an unreasonable application of clearly established Supreme Court precedent.

Accordingly, Petitioner's First Ground for Relief lacks merit.

### B.     Second Ground for Relief

Petitioner's claims that his trial counsel rendered ineffective assistance by not raising timely objection to improper testimony, by failing to file several pre-trial motions, and by not requesting a pre-sentence investigation. Respondent maintains that this claim is procedurally defaulted. It is indeed so, due to Petitioner's failure to assert it in a timely appeal to the Ohio Supreme Court and due to his failure to show cause and prejudice. *See Bonilla*, 370 F.3d at 497.

Alternatively, the claim lacks merit. In finding that Petitioner's trial counsel was not ineffective, the Ohio Court of Appeals described the standards applicable under *Strickland v. Washington*, 466 U.S. 668 (1984) as follows:

> [T]rial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough

to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel."

(Doc. #8, Exh. 9 at 242) (citation omitted). This explanation is consistent with, not contrary to, the standards for evaluating claims of ineffective assistance of trial counsel.

*See Strickland*, 466 U.S. at 687-89. The issue, then, is whether the Ohio Court of Appeals unreasonably applied these standards when evaluating Petitioner's trial counsel.

Driscoll initially argues that defense counsel was ineffective in failing to object to Garringer's testimony regarding the patient history he received because it "is a third-hand report from an unidentified source that said abuse had occurred." Driscoll further argues that his counsel was ineffective for failing to file a liminal motion requesting a hearing so that he could establish, "outside the presence of the jury, that the child's alleged statements had been filtered through two other persons, at least one of whom was not identified, and that he had not independently inquired of [N.E.] what had happened to her." The State responds that Garringer's testimony is admissible hearsay pursuant to Evid. R. 803(4). We disagree.

There are multiple layers of hearsay in Garringer's testimony. First, there is the statement from N.E. to "the babysitter." Second, there is the statement from "the babysitter" to an unidentified triage nurse. Third, there is the statement from the nurse to Garringer. In other words, Garringer was allowed to testify without objection that an unidentified source told him that he or she had been told by "the babysitter" that N.E. had been raped by a member of her household. In contrast to Duffee's testimony involving N.E.'s direct statements to him regarding the source of her injuries, Garringer's testimony regarding the source of N.E.'s injuries was three times removed from the source, N.E., and there is no indication that Garringer ever spoke to N.E. regarding her injuries. In other words, the State provided no foundation to trigger the exception in Evid.R. 803(4) and, accordingly, the exception does not save that portion of Garringer's testimony.

Having reviewed the entire record, however, we conclude that

counsel's failure to object or file a liminal motion does not rise to the level of plain error; the substance of Garringer's testimony was properly adduced by the State through S.B. and Duffee, and subsequent, substantial, and properly admitted cumulative evidence corroborated N.E.'s assertions that Driscoll raped her. Since the testimony complained of is harmless, there is no prejudice to Driscoll.

We further note that the authorities relied upon by the State in arguing that the testimony is admissible pursuant to Evid.R.803(4) are distinguishable from the matter herein. Each of those cases involved statements made by the victims themselves directly to medical personnel who testified regarding the content of the victim's statements.

We also note that Driscoll's reliance upon the test set forth in *Ohio v. Roberts* (June 25, 1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L. Ed. 2d 597, is misplaced. That test has been abrogated by *Crawford v. Washington*. "The Sixth Amendment to the United States Constitution guarantees an accused the right to be confronted with the witnesses against him. Under former law, [*Roberts*], the right to confrontation did not bar admission of an unavailable witness's hearsay statements against a criminal defendant if the statement bore 'adequate indicia of reliability,' a test that was satisfied when the evidence either fell within a 'firmly rooted hearsay exception," or bore 'particularized guarantees of trustworthiness.' *Id.*

"In *Crawford v. Washington, supra*, the Supreme Court changed its view concerning application of the right of confrontation, and held that out-of-court statements by a witness that are testimonial in nature are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the court." *State v. McNew*, Montgomery App. No. 22902, 2009-Ohio-5531, ¶ 62-63 (emphasis added.)

Driscoll next argues that his counsel was ineffective for failing to object to S.B.'s testimony that Driscoll was selling drugs to multiple people from A.I.'s home. After S.B.'s testimony regarding the sale of drugs, the following exchange occurred outside of the presence of the jury:

"THE COURT: All right. The defendant is still present with counsel at table. The State is represented by counsel.  * * *  We do have

an issue. The witness just testified that the defendant sold her crack cocaine. Is that something that the parties anticipated coming out, or how does that affect the nature of the case?

"MR. WILSON: I don't think it's an issue because on the interview it's clear that they are slinging dope. I think it goes to Ron's theory of the case that there are all kinds of people in and out of there. If nothing else, it probably helps Ron.

"MR. MORRIS: Yes. We can probably ask if there are rules on that, but I have nothing yet to present to the Court about instructions or anything.

* * *

"MR. WILSON: If you want to give a full limiting instruction on other facts that the jury is not to regard them for anything other than the witness' bias or prejudice or something like that, I don't care at all on that. * * * It's not a show stopper.

"MR. MORRIS: I would just ask the Court to reserve ruling for now.

* * *

"THE COURT: * * * I just want the record to be clear that the Court is willing to consider any potential remedies that the defense may have. If you don't think it's a problem, or if you think it fits in with the strategy of your case, you don't want the Court to do anything, that's fine, but I will consider any request that you make."

Again, we see no plain error. Given the substantial evidence against Driscoll, any objection to S.B.'s testimony that he was selling drugs at A.I.'s house would not have altered the outcome of Driscoll's trial. Further, the record makes clear that defense counsel considered the impact of S.B.'s testimony and made a strategic decision to allow it to remain unchallenged and refused the trial court's offer of a limiting instruction. Given that Driscoll asserted repeatedly that he was never alone with N.E., S.B.'s testimony that people were coming and going from the home to purchase drugs is consistent with the theory of defense counsel's closing argument,

namely, "Anybody could have done it.  Everybody's a drug addict, no one can be trusted."

Next Driscoll argues, "Several instances of leading questions went unchallenged by defense allowing the prosecutor to basically testify to crucial issues."  Driscoll directs our attention to only one question posed to Erwin regarding her administration of the polygraph test, namely, "The defendant clearly reacted to the relevant questions showing deception, right?"  Again, we see no plain error in defense counsel's failure to object; the results of the stipulated polygraph examination, which clearly stated that Driscoll was deceptive, were admitted into evidence.

Finally, Driscoll asserts that defense counsel was "ineffective in failing to request a pre-sentence investigation or, at least, a separate and subsequent dispositional hearing when arguments could have been raised as to why the most draconian of punishments * * * could have been opposed by Driscoll, possibly through family or other witnesses."

A trial court is not required to order a presentence report pursuant to Crim. R. 32.2(A) in a felony case when probation is not granted.  *State v. Cyrus* (1992), 63 Ohio St.3d 164, 586 N.E.2d 94, syllabus.  Further, as the State asserts, there is nothing in the record to suggest that a presentence investigation report would have provided any mitigation.  Driscoll has a felony criminal history, he is unemployed, he consumes alcohol to excess, and he admitted guilt to other uncharged offenses.  Accordingly, we cannot conclude that counsel's failure to request a presentence investigation fell below an objective standard of reasonableness.

There being no merit to counsel's second assignment of error, it is overruled.

(Doc. #8, Exh. 9 at 243-47).

To demonstrate that his counsel's performance was constitutionally ineffective, a petitioner must show that:  (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland*, 466 U.S. at 687.  A court may dispose of an ineffective assistance of counsel

claim by finding that the petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, a petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*.

In order to satisfy the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by the petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693.

The Ohio Court of Appeals cited *Strickland* and reasonably concluded that Petitioner's ineffective assistance of counsel claim lacked merit. The Ohio appellate court concluded that counsel's failure to object to hearsay testimony or file a liminal motion did not prejudice Petitioner because the same evidence was otherwise properly admitted. The Court also found that counsel's failure to object to testimony regarding testimony that

Petitioner was selling drugs from the house was a strategic decision in that the defense

argued that there were so many people going in and out of the house that the prosecution

could not prove Petitioner guilty of the offense.  The Court also found that any objection

would not have altered the outcome of the trial.  Regarding Petitioner's allegation that

counsel failed to request a presentence investigation report, the appellate court found no

prejudice due to the fact of Petitioner's criminal record and lack of showing any available

mitigation evidence.  For all these reasons, the Ohio Court of Appeals' decision was not an

unreasonable application of clearly established Supreme Court precedent.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

C.      **Third Ground for Relief**

Petitioner asserts that the trial court allowed hearsay testimony over objection of

counsel in violation of the Petitioner right to a fair trial under the Fifth and Fourteenth

Amendment to the U.S. Constitution.  Like his other grounds for relief, this claim is barred

by his procedural default in failing to raise it in a timely appeal in the Ohio Supreme

Court.  *See Bonilla*, 370 F.3d at 497.

Moreover, to the extent this claim asserts an error of state law, is it not cognizable

in the present case.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)("'errors in

application of state law, especially with regard to the admissibility of evidence, are usually

not cognizable in federal habeas corpus.'")(citations omitted)).

Additionally, the claim provides no basis for granting habeas relief.  The Ohio

Court of Appeals addressed this claim as follows:

>    According to Driscoll, the trial court erred in admitting N.E.'s responses to Duffee's two questions of her, namely that "PJ and Black[3]" raped her. The State responds that N.E.'s statements are admissible under Evid.R.803(4) and are not testimonial in nature, pursuant to *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

>    "A reviewing court will not reverse the trial court's admission of evidence absent an abuse of discretion." *State v. Bellomy*, Montgomery App. No.21452, 2006-Ohio-7087. "An abuse of discretion connotes more than a mere error of law or judgment. It implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court." *Id.* (internal citations omitted).

>    "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Evid. R. 803(4) provides the following exception to the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

>    Following Driscoll's objections to Duffee's testimony, a sidebar conference was held. After listening to the parties' arguments, the trial court determined that N.E.'s statements, as related by Duffee, fell within the hearsay exception provided in Evid.R. 803(4). The trial court further decided that *Crawford* did not bar admission of the statements, in reliance upon *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944.

>    In *Muttart*, the defendant was convicted of raping a child under 13 years of age, and the Supreme Court of Ohio determined that the trial court did not abuse its discretion in admitting the victim's out of court statements to medical personnel pursuant to Evid.R. 803(4). The statements contained the perpetrator's identity. The *Muttart* court further determined that the victim's statements were not testimonial in nature and did not implicate the defendant's Sixth Amendment right of confrontation. In the course of its

---

[3] Petitioner was known on the street by the name "Black." (Doc. #8, Exh. 9 at 237).

analysis, the Court determined that the "salient inquiry is * * * whether [the victim's] statements were made for purposes of diagnosis and treatment rather than for some other purpose." *Id.*, ¶ 47.

The Court further went on to note that the trial court "retains the discretion to admit the testimony after considering the circumstances surrounding the child victim's statements." *Id.*, ¶ 48. The Court determined, "[a]t a minimum * * * a nonexhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner, (citations omitted) (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a 'bitter custody battle,' (citations omitted) and (3) whether the child understood the need to tell the physician the truth, (citations omitted). In addition, the court may be guided by the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of the declarations. (Citation omitted). In addition, the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse." *Id.*, ¶ 49.

Having reviewed the record, we see no abuse of discretion; N.E.'s statements to Duffee were made for purposes of medical diagnosis and treatment. There is no suggestion herein that N.E. was not truthful. She repeatedly told a consistent story about what happened to her. There is no suggestion of a motive for fabrication, and Bowermeister explained that due to N.E.'s age, she lacked an ability to fabricate a version of events. N.E. had injuries consistent with her recitation of events. Bowermeister referred N.E. to Duffee for a medical examination, and N.E. told Duffee that she understood she was there to see the doctor because "PJ and Black" had injured her. Duffee made clear that it is his practice to ask non-leading and non-suggestive questions in the course of a sexual abuse examination, and he did so with N.E. We conclude that the trial court did not abuse its discretion in determining that N.E.'s statements were made for medical diagnosis and treatment purposes.

Regarding Driscoll's suggestion that his Sixth Amendment right to confrontation was violated, *Muttart* held, "Statements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils that the *Confrontation Clause* was designed to avoid." *Id.*, ¶46. Accordingly,

Driscoll's claim pursuant to *Crawford* fails, since "we have no concern that the statements at issue were testimonial in nature. The statements made by [N.E.] were not made in the context of in-court testimony or its equivalent. There is no suggestion that they were elicited as part of the police investigation or in a sworn statement with intention of preserving the statement for trial or that they were a pretext or facade for state action." *Id.*, ¶ 61.

Since the trial court did not err in admitting Duffee's testimony, Driscoll's third assignment of error is overruled.

(Doc. #8, Exh. 9 at 239-41)(footnote added).

Under the Confrontation Clause of the United States Constitution, testimonial, out-of-court statements offered against accused to establish the truth of matter asserted may be admitted only where (1) the declarant is unavailable and (2) where the defendant has had prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354 (2004). The Confrontation Clause has no bearing on out-of-court statements that are not testimonial. *Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *see Davis v. Washington,* 547 U.S. 813, 825 (2006); *see also United States v. Johnson,* 581 F.3d 320, 325 (6th Cir. 2009). In deciding whether a statement is testimonial, the proper inquiry is whether the declarant "intends to bear testimony against the accused." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004).

The Ohio Court of Appeals applied the standards set forth in *Crawford* and reasonably determined that the four-year-old victim's statements were not testimonial but were instead made while she was undergoing a physical examination and were not intended by her to bear testimony against Petitioner. As a result, the Ohio Court of

Appeals' decision was not an unreasonable application of clearly established Supreme

Court precedent.

Accordingly, Petitioner's third ground for relief lacks merit.

### D.    Fourth Ground for Relief

Petitioner claims he was denied his Fifth and Fourteenth Amendment to a Fast and

Speedy Trial.  Because he did not include this claim in a timely appeal to the Ohio

Supreme Court and because cause and prejudice do not exist, the claim is barred by his

procedural default.  *See Bonilla*, 370 F.3d at 497.

To the extent Petitioner's argument is based upon a violation of state law, he has

failed to state a claim upon which habeas corpus relief may be granted.  *See Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990); *see also Baze*, 371 F.3d at 322; *Phillips v. Million*, 374

F.3d 395, 397 (6th Cir. 2004); *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998)

(state law speedy trial claim).

Additionally, Petitioner's claims of a federal speedy trial violation lack merit.  The

Sixth Amendment guarantees a defendant the right to a speedy trial which is assessed upon

consideration of the length of the delay, the reasons for the delay, the defendant's assertion

of his right, and prejudice to the defendant.  *Doggett v. United States*, 505 U.S. 647, 651

(1992).  In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court articulated four

factors that applicable to determining whether the Sixth Amendment right to a speedy trial

has been violated:  (1) whether the delay was uncommonly long; (2) the reason for the

delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. No one of these factors constitutes a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*.

The length of the delay is a threshold requirement. If the length of the delay is not "uncommonly long," then judicial examination ends. *Doggett,* 505 U.S. at 652. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530; *accord Maples*, 427 F.3d at 1025 ("The length of the delay is a threshold requirement."); *see Wilson*, 250 F.3d at 394 (first factor (delay) is considered the "triggering" factor); *see also O'Dell*, 247 F.3d at 667 (same).

Petitioner was arrested on May 17, 2008 and went to trial on September 11, 2008. (Doc. # 8 at 75). This four-month period does not rise to the level of presumptively prejudicial. As such, the Ohio Appellate Court's decision on this claim was not contrary to, and did not unreasonably apply, clearly established Supreme Court precedent.

Lastly, because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

## IT IS THEREFORE RECOMMENDED THAT:

1.     Dale Driscoll's  Petition for Writ of Habeas Corpus (Doc. #2) be DENIED

and DISMISSED;

2.     Petitioner be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and

3.     The case be terminated on the docket of this Court.


October 27, 2011

                                        ____s/Sharon L. Ovington_____
                                              Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).